The PEOPLE of the State of
Colorado, Petitioner,

v.

JUVENILE COURT, CITY AND COUNTY
OF DENVER, and one of the Judges
Thereof, Honorable David E. Ramirez,
Respondents.

No. 93SA325.

Supreme Court of Colorado,
En Banc.

March 13, 1995.

As Modified on Denial of Rehearing
April 17, 1995.

A. William Ritter, Jr., Dist. Atty., Second Judicial Dist., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for petitioner.

David F. Vela, State Public Defender, David M. Furman, Julie Iskenderian, Deputy State Public Defenders, Denver, for respondent.

Bonham, Peake & Hutchinson, P.C., Kathy P. Bonham, Denver, Susan L. Burrell, Youth Law Center, San Francisco, CA, for amicus curiae Youth Law Center.

Nancy J. Hutchinson, Denver, for amicus curiae American Civil Liberties Union.

Rudolph Schware, Ruth Buechler, Denver, for amicus curiae Nat. Lawyers Guild.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for amicus curiae Colorado State Atty. Gen.

Justice KIRSHBAUM delivered the Opinion of the Court.

In this original proceeding filed pursuant to C.A.R. 21, the petitioner, the People of the State of Colorado, challenges an order entered by the respondent, the Juvenile Court of the City and County of Denver, concluding that section 19–2–204(3)(a)(III), 8B C.R.S. (1994 Supp.) (the presumption statute), violates constitutional guarantees of substantive and procedural due process of law. The petitioner also seeks reversal of a portion of

the juvenile court's order purporting to prohibit future pretrial secure detention of juveniles accused of violating section 18–12–108.5, 8B C.R.S. (1994 Supp.) (the handgun statute). Having issued a rule to show cause why the relief requested should not be granted, we make the rule absolute.

I

In September 1993, the Governor of the State of Colorado, Roy Romer, convened a special session of the General Assembly to consider issues related to conduct by juveniles. During that special session the General Assembly adopted several measures prohibiting the possession of handguns by juveniles,[1] including the presumption statute.[2] That statute provides that a juvenile is presumed dangerous to himself or herself or the community and therefore may be ordered by a judicial officer to be detained if the juvenile is alleged to have committed a crime as enumerated in section 16–11–309, 8A C.R.S. (1986 & 1994 Supp.); to have committed a felony offense as enumerated in article 3 of title 18, C.R.S.; to have used a firearm during the commission of a felony; or to have possessed a handgun in violation of the handgun statute.[3] Ch. 1, §§ 1–16, 1994 Colo.Sess. Laws 1st Extraordinary Session 1–10.

1. *See, e.g.,* § 18–12–108, 8B C.R.S. (1994 Supp.) (possession of weapon by previous juvenile offender constitutes felony); § 18–12–108.5, 8B C.R.S. (1994 Supp.) (possession of handgun by juvenile offender constitutes misdemeanor); § 18–12–108.7, 8B C.R.S. (1994 Supp.) (providing or permitting a juvenile to possess a handgun constitutes felony).

2. The presumption statute provides as follows:

(III) With respect to this section, the court may further detain the juvenile if the court is satisfied from the information provided at the hearing that the juvenile is a danger to himself or herself or to the community. Any information having probative value shall be received regardless of its admissibility under the rules of evidence. In determining whether a child requires detention, the court shall consider any record of any prior adjudications of the juvenile. There shall be a rebuttable presumption that a juvenile is a danger to himself or herself or to the community if:

(A) The juvenile is alleged to have committed a felony enumerated as a crime of violence pursuant to section 16–11–309, C.R.S.; or

(B) The juvenile is alleged to have used, or possessed and threatened to use, a firearm during the commission of any felony offense against a person, as such offenses are described in Article 3 of Title 18, C.R.S.; or

(C) The juvenile is alleged to have committed possessing a dangerous or illegal weapon, as described in section 18–12–102, C.R.S.; possession of a defaced firearm, as described in section 18–12–103, C.R.S.; unlawfully carrying a concealed weapon, as described in section 18–12–105, C.R.S.; unlawfully carrying a concealed weapon on school, college, or university grounds, as described in section 18–12–105.5, C.R.S.; prohibited use of weapons, as described in section 18–12–106, C.R.S.; illegal discharge of a firearm, as described in section 18–12–107.5, C.R.S.; or illegal possession of a handgun by a juvenile, as described in section 18–12–108.5, C.R.S.

§ 19–2–204(3)(a)(III), 8B C.R.S. (1994 Supp.).

3. The handgun statute provides in pertinent part as follows:

**Possession of handguns by juveniles—prohibited—exceptions—penalty.**

On Friday, October 8, 1993, F.N., a juvenile, was arrested for felony menacing in violation of section 18–3–206, 8B C.R.S. (1986),[4] and unlawful possession of a handgun by a juvenile, in violation of the handgun statute. F.N. was immediately placed at Gilliam Youth Center (Gilliam), a facility designed for the confinement of juveniles, in secure detention. On Sunday, October 10, 1993, a magistrate found probable cause to detain F.N. for felony menacing and for violation of the handgun statute.[5]

On Tuesday, October 12, 1993, a hearing officer conducted a detention hearing, pursuant to section 19–2–204(3)(a)(I), 8B C.R.S. (1994 Supp.). F.N. was represented by a public defender at the hearing. The prosecutor recommended continued detention of F.N. pending a priority filing of a delinquency petition.[6] After reviewing the pretrial detention worksheet and the police report, the hearing officer found that F.N. had pointed a loaded handgun at two people after making "some rather tasteless remarks" to them, concluded that he constituted a danger to himself and to the community, and ordered his continued detention.

On Thursday, October 14, 1993, a petition in delinquency was filed charging F.N. with the class 5 felony of felony menacing and the class 2 misdemeanor of illegal possession of a handgun by a juvenile. On October 19, 1993, F.N. was transferred to the juvenile detention unit of the Arapahoe County Jail.

On October 21, 1993, F.N. filed a motion for release from custody, asserting as grounds therefor that the handgun statute creates a status offense and that detention for commission of a status offense violates the Colorado Children's Code, §§ 19–1–101 to 19–6–106, 8B C.R.S. (1994 Supp.) (the Children's Code), and the Juvenile Justice Delinquency and Prevention Act, 42 U.S.C. §§ 5601 to 5785 (1980) (the Juvenile Act); that the detention of juveniles without bond at Gilliam and at the Arapahoe County Jail constitutes a violation of the Children's Code; and that the presumption statute, both facially and as applied to F.N., violates the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article II, section 25, of the Colorado Constitution.

A hearing on the motion was held, during which several witnesses testified with respect to conditions at Gilliam and the Arapahoe County Jail. At the conclusion of the hearing the juvenile court entered an order concluding in part that enactment of the handgun statute and the presumption statute "gives rise to a Constitutional right to bail for affected juveniles." The juvenile court found that Gilliam and the Arapahoe County Jail were overcrowded, unsanitary, and in many respects unsafe and that juveniles were not treated differently than adults at the Arapahoe County Jail. The juvenile court held that in light of these circumstances detention of juveniles in those two facilities constituted punishment and that no justifica-

(1)(a) Except as provided in this section, it is unlawful for any person who has not attained the age of eighteen years knowingly to have any handgun in such person's possession.
 (b) Any person possessing any handgun in violation of paragraph (a) of this subsection (1) commits the offense of illegal possession of a handgun by a juvenile.
 (c)(I) Illegal possession of a handgun by a juvenile is a class 2 misdemeanor.
 (II) For any second or subsequent offense, illegal possession of a handgun by a juvenile is a class 5 felony.
§ 18–12–108.5, 8B C.R.S. (1994 Supp.).

4. The statute provides that:
 **Menacing.** A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily

injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon, it is a class 5 felony.
§ 18–3–206, 8B C.R.S. (1986).

5. During the weekends, probable cause proceedings are generally conducted by a magistrate or a judge at Gilliam. The magistrate reviews the reports on each detained juvenile and determines whether probable cause exists to continue to hold the juvenile until pending charges are filed.

6. In a priority filing, the district attorney must file a petition within 72 hours after the detention hearing, excluding Saturdays, Sundays, and legal holidays. § 19–2–204(3)(a)(V), 8B C.R.S. (1994 Supp.). The juvenile must then be tried on the charges on which bail is denied within 60 days after the entry of such order denying bail. § 19–2–205(3), 8B C.R.S. (1994 Supp.).

tion existed for denying to such juveniles the constitutional rights to bail enjoyed by adults. The juvenile court also determined that the presumption statute places the burden of persuasion on a detained juvenile to overcome the presumption of dangerousness and that a juvenile's constitutional right to refuse to make self-incriminating statements is impermissibly implicated by the presumption statute.

The juvenile court concluded that in combination the handgun statute and the presumption statute violate the Children's Code and the Juvenile Act and that the presumption statute violates constitutionally protected substantive and procedural due process rights of juveniles, facially and as applied to F.N. The juvenile court ordered F.N. released on bond and also entered an order prohibiting the state from detaining juvenile status offenders in secure facilities. Pursuant to the People's request, we have stayed that portion of the juvenile court's order purporting to prohibit the state from seeking secure detention of juveniles who allegedly have violated the handgun statute.[7]

## II

The People initially contend that the juvenile court erred in concluding that in combination the handgun statute and the presumption statute violate the Children's Code and the Juvenile Act. We agree that the statutes do not violate the Children's Code. The issue of whether the juvenile court erred in determining that the statutes violate the Juvenile Act is moot.

## A

■ It must first be observed that F.N. was initially detained on the basis of allegations that he committed the offense of felony menacing by use of a deadly weapon as well as the offense of possession of a handgun. The former offense is not a status offense. To the extent the juvenile court's analysis is focused exclusively on the assumption that F.N. was detained on the basis of an alleged

status offense, the analysis is fundamentally flawed.

■ The handgun statute prohibits any person younger than eighteen years of age from knowingly possessing a handgun. § 18–12–108.5(1)(a), 8B C.R.S. (1994 Supp.). An initial violation of the statute constitutes a class 2 misdemeanor offense. § 18–12–108.5(1)(c)(I), 8B C.R.S. (1994 Supp.). Any subsequent violation of the statute constitutes a class 5 felony offense. § 18–12–108.5(1)(c)(II), 8B C.R.S. (1994 Supp.). The statute constitutes an amendment to the Colorado Criminal Code. The purposes of the Criminal Code are quite different from the purposes of the Children's Code. *People ex rel. M.C.*, 774 P.2d 857, 861 (Colo.1989). An amendment furthering the purposes of the former cannot be deemed invalid on the ground that such legislation is contrary to the purposes of the latter.

■ The juvenile court appropriately noted that the offense of possession of a handgun by a juvenile is a "status" offense—an offense consisting of conduct that would not constitute an offense if engaged in by an adult. *In re J.E.S.*, 817 P.2d 508, 512 n. 6 (Colo.1991). The presumption statute establishes a presumption that any juvenile alleged to have committed one of several enumerated offenses will be presumed to be a danger to himself or herself or the community, warranting further detention. § 19–2–204(3)(a)(III), 8B C.R.S. (1994 Supp.).

■ Two sections of the Children's Code are directly related to the detention of youths. Section 19–2–204(1) contains the following pertinent provisions respecting the detention of children who do not require physical restriction:

> **Detention and shelter—hearing—time limits—confinement with adult offenders—restrictions.** (1) A juvenile who must be taken from his home but who does not require physical restriction shall be given temporary care in a shelter facility designated by the court or the county de-

7. The juvenile court conducted a bench trial on December 7, 1993, and found F.N. to be a delinquent child for engaging in conduct which would have constituted felony menacing if committed

by an adult. F.N. was sentenced to 45 days' detention; however, the detention was stayed on the condition that F.N. successfully complete an indefinite period of probation.

partment of social services and shall not be placed in detention.

§ 19–2–204(1), 8B C.R.S. (1994 Supp.). Section 19–3–401 contains the following provisions respecting temporary custody of children:

**Taking children into custody.** (1) A child may be taken into temporary custody by a law enforcement officer without order of the court:

(a) When the child is abandoned, lost, or seriously endangered in such child's surroundings or seriously endangers others and immediate removal appears to be necessary for such child's protection or the protection of others;

(b) When there are reasonable grounds to believe that such child has run away or escaped from such child's parents, guardian, or legal custodian; or

(c) When an arrest warrant has been issued for such child's parent or guardian on the basis of an alleged violation of section 18–3–304, C.R.S. No child taken into temporary custody pursuant to this paragraph (c) shall be placed in detention or jail.

. . . .

§ 19–3–401(1), 8B C.R.S. (1994 Supp.). The juvenile court relied upon these two statutes as authority for its conclusion that in combination the handgun statute and the presumption statute violate the Children's Code. By its terms, section 19–2–204(1) deals with juveniles who do not require physical restriction. It is not applicable to the detention of a person such as F.N. who is detained because he or she has allegedly committed a felony offense and who does require physical restriction. Similarly, the provisions of section 19–3–401(1)(c) prohibiting the placement of juveniles in detention or jail relate to circumstances wherein an arrest warrant has been issued for the juvenile's parent or guardian. Such circumstances are not present here. These statutes do not support the juvenile court's determination.

■ The juvenile court also relied upon section 19–1–103(9)(a)(I), 8B C.R.S. (1986), and section 19–2–102(1)(a), 8B C.R.S. (1994 Supp.), as support for its conclusion that the detention of status offender juveniles violates the Children's Code. Sections 19–1–103(4) and 19–2–101(4), (8), 8B C.R.S. (1994 Supp.), define a delinquent child as any person under the age of eighteen who has been found guilty of violating "any statute, ordinance, or order enumerated in section 19–2–102(1)(a)." § 19–2–101(4), 8B C.R.S. (1994 Supp.). Section 19–2–102(1)(a) grants the juvenile court exclusive jurisdiction over juveniles ten years of age or older who violate any state law, "unless otherwise provided by law." § 19–2–102(1)(a), 8B C.R.S. (1994 Supp.). These two statutes establish the jurisdiction of the juvenile court to adjudicate certain juveniles as delinquents. However, in adopting the "otherwise provided by law" caveat in section 19–2–102(1)(a), the General Assembly acknowledged its authority to adopt different processes to effectuate various policies with respect to judicial proceedings concerning juveniles. The legislative determination to adopt the handgun statute and the presumption statute constitutes the exercise of that authority. Absent constitutional concerns, the General Assembly may amend or repeal prior legislation as the result of the adoption of policies that differ from those previously embraced by that governmental institution. A contrary view would subject legislative policy-making to the ultimate supervision of the judicial branch of government, in contravention of the separation of powers doctrine.

■ Furthermore, in our view the presumption statute and the handgun statute do not contravene the general purposes for which the Children's Code was adopted. These purposes are expressed in the legislative declaration to the Children's Code as follows:

**Legislative declaration.** (1) The general assembly declares that the purposes of this title are:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

(1.5)(a) The general assembly declares that it is in the best interests of the child who has been removed from his own home to have the following guarantees:

(I) To be placed in a secure and stable environment;

(II) To not be indiscriminately moved from foster home to foster home; and

(III) To have assurance of long-term permanency planning.

(1.6) The general assembly recognizes the numerous studies establishing that children undergo a critical bonding and attachment process prior to the time they reach six years of age. Such studies further disclose that a child who has not bonded with a primary adult during this critical stage will suffer significant emotional damage which frequently leads to chronic psychological problems and antisocial behavior when the child reaches adolescence and adulthood. Accordingly, the general assembly finds and declares that it is appropriate to provide for an expedited placement procedure to ensure that children under the age of six years who have been removed from their homes are placed in permanent homes as expeditiously as possible.

(1.7) The general assembly further declares that it is the intent of the general assembly to have the media and the courts refrain from causing undue hardship, discomfort, and distress to any juvenile victims of sexual assault, child abuse, incest, or any offenses listed in wrongs to children pursuant to part 4 of article 6 of title 18, C.R.S., by not disseminating or publishing the names of such victims.

(2) To carry out these purposes, the provisions of this title shall be liberally construed to serve the welfare of children and the best interests of society.

§ 19–1–102, 8B C.R.S. (1994 Supp.).

■ The General Assembly has amended the legislative purpose provisions of the Children's Code several times. *See, e.g.,* Ch. 141, sec. 1, § 19–1–102, 1984 Colo.Sess.Laws 564; Ch. 138, sec. 1, § 19–1–102, 1987 Colo.Sess. Laws 695; Ch. 139, sec. 1, § 19–1–102(1.5), 1988 Colo.Sess.Laws 755; Ch. 135, sec. 1, § 19–1–102(1.7), 1990 Colo.Sess.Laws 1007; Ch. 41, sec. 1, § 19–1–102(1.5)(a), 1992 Colo. Sess.Laws 220; Ch. 329, sec. 1, § 19–1–102(1.6), 1994 Colo.Sess.Laws 2051. The handgun statute and the presumption statute were adopted to secure the safety of juveniles and of the communities in which they reside. The Children's Code has consistently evidenced a legislative intent to accomplish both such purposes.

The juvenile court indicated that the decisions of this court and of the court of appeals in *People ex rel. T.M.,* 742 P.2d 905 (Colo. 1987), and *People v. E.R.,* 29 Colo.App. 525, 487 P.2d 824 (1971), respectively, support its conclusion that the presumption statute violates the legislative intent of the Children's Code. In *T.M.,* we held that a juvenile subject to a delinquency proceeding as the result of alleged conduct that would have constituted a class 2 misdemeanor if perpetrated by an adult had no due process or equal protection rights to trial by jury. In *E.R.,* the court of appeals held that an alleged violation of a probation order by a juvenile adjudicated to be a child in need of supervision could not serve as the basis for initiation of delinquency proceedings. The holdings of those cases are not controlling here.

■ The opinions in *T.M.* and *E.R.* do emphasize the beneficent and protective purposes underlying the Children's Code. The adoption of the Children's Code and the establishment of a juvenile court was based on a legislative conclusion that adjudication of issues arising from the conduct of young persons must focus on the protection and rehabilitation of such persons. *See, e.g., S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988);

*S.A.S. v. People,* 623 P.2d 58, 60 (Colo.1981). We have also recognized that the Children's Code is designed to assure that in general juveniles should not be detained in facilities constructed for the incarceration of adults. *See M.C.,* 774 P.2d at 866 (Mullarkey, J., dissenting). However, the Children's Code expressly recognizes the necessity of balancing the primary concern for protecting and nurturing young persons with concerns for the safety of all members of society. §§ 19–1–102(1)(a), (2), 8B C.R.S. (1994 Supp.). The General Assembly concluded that adoption of the presumption statute and the handgun statute was necessary for the best interests of society as well as for the welfare of juveniles. This determination is not inconsistent with the general beneficent policies embodied in other provisions of the Children's Code and recognized in prior judicial decisions.

### B

The juvenile court concluded that the detention in secured facilities of a juvenile for committing a status offense is prohibited by section 223 of the Juvenile Act, 42 U.S.C. § 5633(a)(12)(A) (1993 Supp.). It must again be noted that F.N. was arrested in part because he engaged in felony menacing with a deadly weapon—conduct which constitutes a felony offense if committed by an adult. The Juvenile Act does not prohibit detention in secured facilities of young persons who commit felonies. In these circumstances, the juvenile court's references to the Juvenile Act must be considered dicta.

Furthermore, it must be observed that at the time the juvenile court addressed this issue, the Juvenile Act contained the following pertinent provisions:

(a) In order to receive formula grants under this part, a State shall submit a plan for carrying out its purposes applicable to a 3–year period.... In accordance with regulations which the Administrator shall prescribe, such plan shall—

....

(12)(A) provide within three years after submission of the initial plan that juveniles who are charged with or who have committed offenses that would not be criminal if committed by an adult or offenses which do not constitute violations of valid court orders, or alien juveniles in custody, or such nonoffenders as dependent or neglected children, shall not be placed in secure detention facilities or secure correctional facilities....

42 U.S.C. § 5633(a)(12)(A) (1993 Supp.). Subsequently, the Congress adopted the Violent Crime Control and Law Enforcement Act of 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 2010, sec. 110201 (1994) (to be codified at 18 U.S.C. § 922(x)). That statute expressly prohibits possession of handguns by juveniles. The Congress also provided that juveniles arrested for possessing handguns in violation of the new amendment to the Juvenile Act or for conduct that violates any similar state statute could be detained in secure facilities. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 2010, sec. 110201 (1994) (to amend 42 U.S.C. § 5633(a)(12)(A) (1994 Supp.)). In view of the posture of this case, we need not address the juvenile court's dicta that placement in secured facilities of juveniles arrested on the basis of a violation of the handgun statute is prohibited by the Juvenile Act.[8]

### III

The juvenile court held that the enactment of the handgun statute and the presumption statute "gives rise to a Constitutional right to bail for affected juveniles." The People contend that the juvenile court erred in reaching this conclusion. We agree.

Because delinquency proceedings are fundamentally different from adult criminal proceedings, not all constitutional protections afforded to adult criminals have been extended to juveniles. *Schall v. Martin,* 467

---

8. The juvenile court also indicated its view that because detention in secured facilities of juveniles who violate the handgun statute was prohibited by the Juvenile Act, juveniles detained on that basis could file civil actions against the state, pursuant to 42 U.S.C. § 1983 (1988), alleging violations of federally protected rights. In view of the current pertinent federal legislation, we do not address these observations.

U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984); cf. *L.O.W. v. District Court,* 623 P.2d 1253, 1255 (Colo.1981). In *L.O.W.,* we considered whether the Eighth Amendment to the United States Constitution or article II, section 20, of the Colorado Constitution provide a juvenile with an unqualified right to release on bail.[9] After weighing the adverse impact of the availability of bail on informal pre-adjudication juvenile proceedings against the benefits to be anticipated from extending the constitutional rights of adults to bail to affected juveniles, we held that "a child does not have an absolute constitutional or statutory right to bail pending adjudication of the charges filed against him in juvenile court." *L.O.W.,* 623 P.2d at 1255. We also stated that a juvenile may be detained only after giving credence to a presumption of release "except in narrowly defined circumstances where the state establishes that detention is necessary to protect the child from imminent harm or to protect others in the community from serious bodily injury." *Id.* at 1259.

The juvenile court acknowledged our holding in *L.O.W.* However, it indicated that because the conditions at both Gilliam and the Arapahoe County Jail constituted punishment, F.N. and other juveniles placed in those two facilities were not being treated differently from adults and the "justification ... for not extending the right to bail [articulated in *L.O.W.*] is no longer present." The juvenile court misconstrued *L.O.W.*.

■■■■ We did recognize in *L.O.W.* that the Children's Code establishes a presumption that juveniles awaiting dispositional hearings should be released. *Id.* However, we also concluded that if in a particular case the state establishes that detention of a particular child is necessary for the protection of the child or the protection of other community members from bodily harm which the child is likely to inflict, the child may be detained. *Id.* The inquiry concerning whether an exception to the presumption of bail for juveniles should be recognized focuses primarily on the circumstances surrounding the conduct and character of the juvenile rather than on the nature of particular detention facilities. We reaffirm our decision in *L.O.W.,* and conclude that the juvenile court erred in suggesting that the conditions of confinement at Gilliam and at the Arapahoe County Jail in some fashion converted the statutory presumption of bail established by the Children's Code into a constitutional requirement of release for F.N.[10]

## IV

■■■ The People assert that the juvenile court's conclusions that the presumption statute "constitutes an unconstitutional denial of substantive and procedural Due Process, both facially and as applied to [F.N.]," are erroneous.[11] We agree.

We have re-affirmed our determination in *L.O.W.* that juveniles have no absolute constitutional right to bail. To the extent the juvenile court's conclusion that the presumption statute violates constitutional guarantees of due process is based on its contrary view, its analysis is incorrect.

The juvenile court's conclusions are also based on its determination that detention of juveniles at Gilliam and the Arapahoe County Jail constitutes punishment. The juvenile court reasoned that punitive confinement of juveniles is "incompatible" with the legitimate governmental interests underlying the presumption statute. We reject the juvenile court's determination that the presumption

---

9. Our decision in *L.O.W.* to a great extent anticipated the United States Supreme Court's decision in *Schall.*

10. In view of the fact that F.N. has been adjudicated a delinquent child, we need not determine whether the record supports the hearing officer's initial determination that F.N. should be detained pending his expedited dispositional hearing.

11. Although the juvenile court at times made reference to the due process standard set forth in art. II, sec. 25, of the Colorado Constitution, it made no distinction between federal and state constitutional criteria in its opinion. In this circumstance, we conclude that federal standards were employed. *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983); *People v. Inman,* 765 P.2d 577, 578–79 (Colo.1988); *see People v. Young,* 814 P.2d 834, 842 (Colo.1991).

statute violates constitutional guarantees of due process of law.

## A

■ A statute is facially unconstitutional only if no conceivable set of circumstances exists under which it may be applied in a constitutionally permissible manner. *Reno v. Flores,* 507 U.S. ——, ——, 113 S.Ct. 1439, 1446–47, 123 L.Ed.2d 1, 16 (1993); *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *Schall v. Martin,* 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 2412 n. 18, 81 L.Ed.2d 207 (1984); *see People v. Garcia,* 189 Colo. 347, 350, 541 P.2d 687, 689 (1975). The presumption statute permits the release on bail of juveniles who overcome the evidentiary presumption contained therein. The fact that F.N. did not overcome such presumption in this case does not establish that no juvenile ever will.

■ The juvenile court construed the presumption statute to in effect shift the burden of proof from the state to the juvenile with respect to establishing whether secure detention was warranted to protect the juvenile or society. We do not so construe the statute.

■ In *L.O.W.,* 623 P.2d at 1259, we recognized a presumption that a juvenile should not be confined pending a dispositional hearing "except in narrowly defined circumstances where the state establishes that detention is necessary to protect the child from imminent harm or to protect others in the community from serious bodily harm." The presumption statute defines one narrow set of circumstances in which the presumption of release may initially be overcome because of specific circumstances indicating that detention is necessary for the protection of the juvenile or others: the possession of a handgun by a juvenile. The statute does not shift the burden of proof from the state, but merely requires a juvenile to introduce some evidence to overcome the presumption of dangerousness created by the statute. *See People v. Jones,* 191 Colo. 385, 387, 553 P.2d 770, 772–73 (1976); *Rogers v. People,* 161 Colo. 317, 326, 422 P.2d 377, 381 (1966); *cf. People v. Hawkins,* 192 Colo. 535, 537, 560

P.2d 833, 835 (1977). Furthermore, contrary to the view expressed by the juvenile court, the evidence presented by the juvenile need not implicate constitutional protections against self-incrimination. Evidence that one does not constitute a danger to himself, herself, or others need not focus on the particular events giving rise to that person's detention. We reject the juvenile court's conclusion that the presumption statute on its face violates F.N.'s constitutionally protected rights to procedural due process of law.

## B

The juvenile court determined that on its face the presumption statute violates F.N.'s substantive due process rights. We disagree.

■ We first note that even were we to assume that the juvenile court's factual findings concerning the conditions at Gilliam and the Arapahoe County Jail were appropriate in the circumstances of this case and that those findings supported its conclusion that detention of juveniles at those two institutions constituted punishment, neither those findings nor any evidence adduced at the hearing suggest that every institution in which a juvenile might be detained in Colorado is characterized by conditions that must be deemed punitive for purposes of due process analysis. In view of this state of the record, the juvenile court's determination that the presumption statute on its face violates the fundamental fairness doctrine applicable to juveniles is erroneous.

■ The juvenile court relied upon the decision of the United States Supreme Court in *Schall,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207, in concluding that the presumption statute on its face deprives F.N. and other juveniles of substantive due process of law. We do not so construe *Schall.*

■ Because a juvenile has a liberty interest in freedom from institutional restraints, the due process clause of the Fifth Amendment to the United States Constitution, applicable to the several states pursuant to the Fourteenth Amendment thereto, is applicable to juvenile detention proceedings.

*Schall,* 467 U.S. at 263, 104 S.Ct. at 2409; *In re Gault,* 387 U.S. 1, 13–14, 87 S.Ct. 1428, 1436–37, 18 L.Ed.2d 527 (1967); *L.O.W.,* 623 P.2d at 1259 n. 18. Pretrial detainment of juveniles is thus measured by the "fundamental fairness" due process standard established in *In re Gault,* 387 U.S. at 29–30, 87 S.Ct. at 1444–45, and *In re Winship,* 397 U.S. 358, 365–68, 90 S.Ct. 1068, 1073–75, 25 L.Ed.2d 368 (1970). *Schall,* 467 U.S. at 263, 104 S.Ct. at 2409. Decisions articulating due process standards for evaluating the circumstances wherein a juvenile may be detained have sought to accommodate the goals and philosophies of the juvenile system within the due process framework of fundamental fairness. *L.O.W.,* 623 P.2d at 1257.

In *Schall,* the Supreme Court held that provisions of a New York state statute [12] authorizing pretrial detention of juveniles based upon a finding of serious risk that an arrested juvenile may commit a crime prior to his or her return date did not on its face violate federal due process guarantees. The Supreme Court determined that the preventive detention authorized by the statute served a legitimate state objective which outweighed a juvenile's countervailing interests in freedom from institutional restraint, that such detention in secure facilities did not constitute punishment, and that the statute contained adequate procedural safeguards to prevent erroneous and unnecessary deprivations of a juvenile's liberty interest.

 The juvenile court made numerous findings of fact in determining that detention of juveniles at Gilliam and at the Arapahoe County Jail constituted punishment. Such findings do not resolve the issue of the facial validity of the presumption statute. In order to determine whether preventive detention of juveniles in secure facilities such as Gilliam and the Arapahoe County Jail constitutes punishment for purposes of fundamental fairness analysis of the facial validity of the presumption statute, we must consider the legislative purposes giving rise to the statute, the relationship between the statute's substantive provisions and those purposes, and

the procedures authorized by the statute. *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101–02, 95 L.Ed.2d 697 (1987); *Schall,* 467 U.S. at 269–71, 104 S.Ct. at 2412–14.

We have previously recognized that preventive detention of juveniles pursuant to the Children's Code is designed to protect the juvenile from imminent harm or to protect others in the community from serious bodily harm. *L.O.W.,* 623 P.2d at 1259; *see also* § 19–2–204(3)(a)(III), 8B C.R.S. (1994 Supp.). The state has a substantial and necessary interest in protecting all citizens from harm. *Schall,* 467 U.S. at 264, 104 S.Ct. at 2409–10; *L.O.W.,* 623 P.2d at 1259. As the Supreme Court observed in *Schall,* "[c]rime prevention is a 'weighty social objective'" and "this interest persists undiluted in the juvenile context." *Schall,* 467 U.S. at 264, 104 S.Ct. at 2410 (citing *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)).

 We have also recognized that juveniles have significant interests in freedom from institutional restraints. *L.O.W.,* 623 P.2d at 1258–59. However, those interests are not fundamental rights for purposes of the Fourteenth Amendment. *Id.* at 1259; *Flores,* 507 U.S. at ——, 113 S.Ct. at 1448–49, 123 L.Ed.2d at 18; *Schall,* 467 U.S. at 265, 104 S.Ct. at 2410. The conclusion that liberty interests possessed by juveniles are not fundamental rights is based in part on the fact that unlike an adult, a juvenile is always subject to some measure of custodial supervision. *Flores,* 507 U.S. at ——, 113 S.Ct. at 1447–48, 123 L.Ed.2d at 17; *Schall,* 467 U.S. at 265, 104 S.Ct. at 2410. Juveniles "are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae.*" *Schall,* 467 U.S. at 265, 104 S.Ct. at 2410; *see New Jersey v. T.L.O.,* 469 U.S. 325, 336, 105 S.Ct. 733, 739–40, 83 L.Ed.2d 720 (1985). In addition, juveniles are not assumed to have the capacity to provide independently for themselves. *Schall,* 467 U.S. at 265, 104 S.Ct. at 2410; *see Flores,* 507 U.S.

**12.** The statutory section in question, N.Y.Jud. Law § 320.5 (McKinney 1983), constitutes a portion of the New York Family Court Act.

at ——, 113 S.Ct. at 1447–48, 123 L.Ed.2d at 17.

■ There is a relationship between possession of a deadly weapon by a juvenile and a risk of imminent and serious harm to the community or to the juvenile. In view of that relationship, detention of juveniles possessing deadly weapons prior to the conclusion of formal adjudicatory proceedings serves a legitimate state objective. *Schall*, 467 U.S. at 268, 104 S.Ct. at 2412;[13] *see L.O.W.*, 623 P.2d at 1259 n. 18.

■ The executive order convening the special session of the General Assembly states in part that one purpose of such session was to provide "immediate detention and punishment" of juveniles who possess handguns. 1st Extraordinary Sess.1993 Colo. Sess.Laws ix. When read in context, this statement reflects the Governor's view that immediate legislative action was necessary to address several interrelated issues. The executive order also refers to "expedited prosecution" of juveniles, and legislation enacted by the General Assembly at the special session evidences legislative intent to improve conditions for detained juveniles and to minimize the punitive effects of pretrial detention. *Id.* at x; *see, e.g.,* § 19–2–204(3)(a)(III)(D), 8B C.R.S. (1994 Supp.) (decreasing the time during which a juvenile may be detained for committing a crime). In our view, the presumption statute does not reflect a punitive legislative purpose.

■ Although preventive detention of juveniles may serve a legitimate governmental objective, punitive detention of juveniles prior to final adjudication does not satisfy the fundamental fairness doctrine. *Schall*, 467 U.S. at 269, 104 S.Ct. at 2412–13.

■ In determining whether pretrial detention of juveniles constitutes punishment for purposes of fundamental fairness analysis, the length of time a juvenile may be detained is an important factor. *Id.* at 269–70, 104 S.Ct. at 2412–13. The presumption statute authorizes pretrial detention of juveniles for up to sixty-seven days. We do not

find such period of time to be constitutionally excessive.

The statute at issue in *Schall* provided for a maximum pretrial detention period of seventeen days. In rejecting arguments that such period of detention constitutes punishment, the Supreme Court did not indicate that any particular detention period would necessarily violate due process standards. Other courts have also refused to establish a specific time period. *See United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir.1986) (four months); *United States v. Melendez–Carrion*, 790 F.2d 984, 1004 (2d Cir.1986) (eight months); and *United States v. Gallo*, 653 F.Supp. 320 (E.D.N.Y.1986) (pretrial detention of more than six months might suggest that a violation of due process has occurred). At some point pretrial detention of a juvenile without an adjudication of guilt "will be unpalatable to our notions of fundamental fairness which underlie due process." *Gallo*, 653 F.Supp. at 334. In our view the pretrial detention period of sixty-seven days established by the presumption statute does not violate such standard. This view is reinforced when the procedural safeguards also established by the statute are taken into consideration.

■ The presumption statute provides that a juvenile is entitled to a hearing within forty-eight hours after his or her initial detention, excluding Saturdays, Sundays, and legal holidays, for a judicial determination of whether the juvenile should continue to be detained. § 19–2–204(3)(a)(I), 8B C.R.S. (1994 Supp.). The detention hearing is not a preliminary hearing. § 19–2–204(3)(a)(II), 8B C.R.S. (1994 Supp.). While evidence respecting the circumstances of the alleged conduct of the juvenile may be presented, the state need not at the detention hearing establish probable cause to believe the juvenile committed an offense. The evidence presented at a detention hearing must be relevant to the determination of whether the juvenile is dangerous to himself, herself, or others, thus requiring continued detention, and what terms of detention should be imposed if further detention is warranted.

---

13. In *Schall*, the Supreme Court noted that every state allows preventive detention of juveniles ac-

cused of crime. *Schall*, 467 U.S. at 266–67, 104 S.Ct. at 2410–11 (citations omitted).

■ We have recognized that the admission of hearsay evidence at preliminary hearings is constitutionally permissible. *People v. Scott,* 785 P.2d 931, 933 (Colo.1990); *People v. Jensen,* 765 P.2d 1028, 1031 (Colo. 1988). We similarly conclude that the admission of hearsay evidence at a detention hearing does not violate a juvenile's right to fundamental fairness.

■ Contrary to arguments advanced in support of the juvenile court's order, the absence of statutory language delineating the nature or extent of evidence a juvenile might rely upon to overcome the presumption of dangerousness in no manner restricts such juvenile's due process rights. To the contrary, by authorizing a juvenile to submit information otherwise not admissible as evidence to support his or her arguments, the statute expands the ability of a juvenile to overcome the presumption of dangerousness.

■ A juvenile accused in a petition of a delinquent act which constitutes a felony may elect to file a motion for a preliminary hearing to determine whether probable cause exists to believe the juvenile committed the charged offense, in which event such hearing must be held within thirty days of the date the motion was filed. § 19–2–404(1), 8B C.R.S. (1994 Supp.). If a juvenile is denied bond, a petition in delinquency must be filed within seventy-two hours after the detention hearing, excluding Saturdays, Sundays and legal holidays, absent a showing of good cause for an extension of such time period. § 19–2–204(3)(a)(V), 8B C.R.S. (1994 Supp.). A juvenile denied bond must be tried on the charges on which bond was denied within sixty days of the entry of the order denying bond. § 19–2–205(3), 8B C.R.S. (1994 Supp.). These expedited time frames are adequate to ensure the speedy release of juveniles wrongfully detained without bond.

■ When a juvenile is temporarily detained for allegedly committing an offense, a law enforcement official must notify the juvenile's parent or legal guardian of that fact "without unnecessary delay." § 19–2–203(1), 8B C.R.S. (1994 Supp.). This expeditious procedure helps prevent improper detention of juveniles. The presumption statute also authorizes an extension of time, for good cause, within which the detention hearing must be held. § 19–2–204(3)(a)(I), 8B C.R.S. (1994 Supp.). This provision ensures that a detained juvenile will have adequate time to prepare for a detention hearing. A juvenile may also request an extension of time pursuant to section 19–2–204(3)(a)(I) to obtain the services of private or public counsel in connection with a detention hearing.[14] Contrary to arguments advanced in support of the juvenile court's order, the absence of a requirement in the presumption statute that a juvenile must be represented by an attorney at any detention hearing does not violate the principle of fundamental fairness.

■ The juvenile court concluded that the rebuttable presumption statute impermissibly restricts the right of a juvenile to refuse to make self-incriminating statements at a detention hearing. We do not agree.

■ Juveniles enjoy the privilege against self-incrimination guaranteed to adults by the Fifth and Fourteenth Amendments to the United States Constitution. *In re Gault,* 387 U.S. at 30, 87 S.Ct. at 1445. Requiring a juvenile to present evidence that he or she does not constitute a danger to himself, herself, or the community implicates self-incrimination issues only if the juvenile elects to testify and subject himself or herself to cross-examination. Evidence other than testimony by the juvenile may be introduced by the juvenile to rebut the statutory presumption of dangerousness. Furthermore, trial courts may prevent the use at trial of testimony by a defendant that is necessary for the vindication of a constitutional right. *Simmons v. United States,* 390 U.S. 377, 393–94, 88 S.Ct. 967, 975–77, 19 L.Ed.2d 1247 (1968); *United States v. Perry,* 788 F.2d 100, 115–16 (3d Cir.1986) (availability of judicial grant of use immunity with respect to defendant's testimony in rebutting the presumption of dangerousness sufficient to avoid violation of Fifth Amendment); *cf. United States v. Ingraham,* 832 F.2d 229, 237–38 (1st Cir.1987) (distinguishing *Perry* as applying only when the defendant's testimo-

14. F.N. was represented by an attorney at the detention hearing in this case.

ny was required by a statutory presumption). The presumption statute neither directly nor indirectly requires a juvenile to forego his or her right to refuse to present self-incriminating evidence at a detention hearing.

## V

We have concluded that the evidentiary presumption established by section 19–2–204(3)(a)(III), 8B C.R.S. (1994 Supp.), does not impermissibly shift the burden of proof from the state to a juvenile at a detention hearing. We have also determined that on its face the presumption statute does not constitute punitive legislation and contains sufficient procedural safeguards to satisfy the fundamental fairness doctrine applicable to juveniles. Although the juvenile court expressly stated that the presumption statute violated F.N.'s right to procedural due process of law as applied to him, the court's discussions of the procedural provisions of the presumption statute are uniformly general rather than specific.[15] In the absence of any specific findings that F.N., as opposed to all other juveniles subject to the statute, was in some manner particularly deprived of his constitutionally protected rights to procedural due process of law, the juvenile court's stated conclusion is not supported by the record and will be rejected.

The juvenile court's conclusion that the presumption statute as applied to F.N. deprived him of constitutionally guaranteed rights to substantive due process of law is moot because F.N. was released from detention.[16] In declining to address the question of whether the juvenile court erred in concluding that as applied the presumption statute violated F.N.'s right to due process of law, we also decline to consider whether the

evidence supported the juvenile court's numerous factual findings.

## VI

In its remedial order the juvenile court stated that "the declaration that the rebuttable presumption is unconstitutional ... prohibits the state from detaining in a secured facility all status offenders in the future." We stayed that order pending resolution of this original proceeding. Based on our conclusion that neither the presumption statute nor the rebuttable presumption of dangerousness established therein violates constitutional due process standards of fundamental fairness applicable to juveniles, we reverse that portion of the juvenile court's order.

## VII

For the foregoing reasons, we make absolute the rule to show cause previously issued to the juvenile court.

---

15. The juvenile court prefaces its discussion of procedural provisions of the presumption statute as follows: "Next it must be determined whether the procedures afford *pre-trial detainees* sufficient protection against erroneous and unnecessary deprivation of liberty." (Emphasis added.)

16. The juvenile court did not suggest that the detention of F.N. at Gilliam and at the Arapahoe County Jail constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment's prohibition against cruel and un-

usual punishment does not apply to pretrial detainees. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). The due process clause of the Fourteenth Amendment affords pretrial detainees rights not enjoyed by convicted inmates, *see Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir.1987), and pretrial detainees cannot be subjected to "any form of punishment" under the due process clause. *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993).