A.C., IV, a Child, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 99SC472.

Supreme Court of Colorado, En Banc.

Jan. 22, 2001.

Dennis W. Hartley, P.C., Dennis W. Hartley, Kimberly K. Caster, Colorado Springs, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Clemmie Parker Engle, Senior Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In 1997, then thirteen-year-old A.C. inadvertently shot and killed his sixteen-year-old friend. The People filed a delinquency petition alleging that A.C. committed an act, which if committed by an adult, would have constituted the class four felony of reckless manslaughter. The delinquency petition also charged A.C. with the class two misdemeanor of possession of a handgun by a juvenile.

A.C. moved for a jury trial claiming a statutory right to a jury trial under section 19–2–107, 6 C.R.S (2000), of the Children's Code. The trial court ruled that the statute did not create a right to a jury trial. A.C. filed a second motion claiming a constitutional right to a jury trial under both the Colorado and United States Constitutions, and further claiming that section 19–2–107 was unconstitutional insofar as it deprived him of the right to be tried by a jury. The trial court also denied that motion. In a trial to the court, the court adjudicated A.C. delinquent but found him not guilty of manslaughter. Rather, the court found A.C. guilty of the lesser included offense of criminally negligent homicide, a class five felony, and of juvenile possession of a handgun, a class two misdemeanor in violation of section 18–12–108.5, 6 C.R.S. (2000).

The court of appeals upheld the trial court's determination that neither Colorado law nor the Colorado or United States Constitutions mandate a trial by jury in a delinquency proceeding. *See People v. A.C.,* 991 P.2d 304, 307–08 (Colo.App.1999). We now affirm.

I.

The juvenile justice system is different from the adult criminal system. It is designed to serve the welfare of children and the best interests of society. § 19–1–102(1)(a), 6 C.R.S. (2000). The Colorado Children's Code intends "to secure for each child subject to these provisions such care and guidance ... as will best serve his welfare and the interests of society." § 19–1–102(1)(a). The Code provides for delinquency adjudications for juveniles as opposed to

felony or misdemeanor convictions. While in some respects these proceedings share similarities with criminal trials, the "underlying theme of a delinquency proceeding is to provide guidance and rehabilitation for the child and protection for society rather than fixing criminal responsibility, guilt, and punishment." *People v. T.M.*, 742 P.2d 905, 907 (Colo.1987).

In service of these goals, the Children's Code seeks to provide informal, simple and speedy judicial procedures. *Id.* The state's role in juvenile proceedings is not that of a prosecutor, but rather that of *parens patriae* to protect the welfare of the child. *Id.* The delinquency system seeks to keep the child from further criminal episodes by addressing the problem and solving it. While the adult system similarly seeks to promote public safety, rehabilitate offenders, and repair the injury caused by the offense, *see* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 1.5 (1986), the legislature also designs sanctions for adult criminal defendants with more emphasis on punishment and deterrence. *People v. Cisneros*, 855 P.2d 822, 836 (Colo.1993). One of the fundamental differences between the juvenile system of justice and an adult criminal prosecution "is the overriding goal of the Children's Code to provide guidance and rehabilitation to an adjudicated delinquent child in a manner consistent with the best interest of the child and the protection of society rather than fixing criminal responsibility, guilt, and punishment." *S.G.W. v. People*, 752 P.2d 86, 91 (Colo.1988). Although the juvenile system has flaws, and a much higher rate of recidivism than would be ideal, it nonetheless is better suited to serve purposes of rehabilitation and restoration than the adult system. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 547–48, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (noting that despite "disappointments of grave dimensions" the juvenile system holds promise for the rehabilitation of juvenile offenders). In fact, Colorado's General Assembly has chosen to preserve the juvenile system to try to promote the best interests of the young people it serves. At the same time, the legislature has chosen to permit a juvenile to be charged, tried and sentenced as an adult under circumstances where the severity of the crime mandates it. § 19–2–517, 6 C.R.S. (2000).

## II.

This unique nature of juvenile delinquency proceedings prompts courts to refer to them as civil in nature. *S.A.S. v. Dist. Court*, 623 P.2d 58, 60 (Colo.1981) (finding "a petition in delinquency is classified as civil in character"). However, the United States Supreme Court has determined that despite the similarities of juvenile proceedings to civil proceedings, due process requires that courts make certain protections offered to adult criminal defendants available to alleged juvenile offenders. *See McKeiver*, 403 U.S. at 531–34, 91 S.Ct. 1976 (noting that prior precedent demands due process protections to juveniles including the right to notice of the charge, the right to counsel, rights of confrontation and cross-examination and the privilege against self-incrimination). Colorado courts follow this view. *T.M.*, 742 P.2d at 908; *S.A.S.*, 623 P.2d at 61. We have adopted a "case-by-case approach analyzing the nature of rights asserted by juveniles under due process standards, giving appropriate weight to the state's interest in 'informality, flexibility, or speed' in juvenile proceedings." *T.M.*, 742 P.2d at 908 (citing *McKeiver*, 403 U.S. at 541, 91 S.Ct. 1976).

Within that framework, we turn to an analysis of jury trials in delinquency proceedings. The Children's Code does provide for a right to a jury trial for juveniles charged as aggravated offenders, and for juveniles charged with having committed a crime of violence. The statute also permits the court to order a jury trial in other kinds of juvenile cases, excepting only misdemeanor, petty offense or municipal ordinance violations. The relevant portions of section 19–2–107 state:

> (1) In any action in delinquency in which a juvenile is alleged to be an aggravated juvenile offender, as described in section 19–2–516, or is alleged to have committed an act that would constitute a crime of violence, as defined in section 16–11–309 [1],

1. Section 16–11–309, 6 C.R.S. (2000) defines crimes of violence as "any crime against an at-

C.R.S., if committed by an adult, the juvenile or the district attorney may demand a trial by a jury of not more than six persons except as provided in section 19–2–601(3)(a), or the court, on its own motion, may order such a jury to try any case brought under this title, except as provided in subsection (2) of this section.

(2) The juvenile is not entitled to a trial by jury when the petition alleges a delinquent act which is a misdemeanor, a petty offense, a violation of a municipal or county ordinance or a violation of a court order.

▇ A.C. argues that section 19–2–107 fails to address jury trials for a juvenile charged with a felony or a class one misdemeanor, and thus, in those circumstances, the court must order a jury trial if requested. We disagree. The statute mandates jury trials in only two circumstances: when the juvenile is charged as an aggravated juvenile offender or with a crime of violence. The statute further provides that a court *may*, on its own motion, order a jury trial in any case except those exempted by the statute. The court of appeals found, and we agree, that charging a juvenile with a felony not enumerated in the statute or a class one misdemeanor does not automatically entitle a juvenile to a jury trial. Rather, the trial court has discretion to grant a jury trial, and the trial court's refusal to grant a jury trial under such circumstances does not constitute error.

▇ Rules of statutory construction mandate that this court construe statutes by looking first at the plain meaning of the words employed. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo.2000). When statutory language is clear and unambiguous, the court will not resort to other rules of statutory construction. *Id.* The court will not create an exception to a statute that the plain meaning does not suggest or demand. *Id.* The plain meaning of the language of section 19–2–107(1) clearly allows the trial court in its discretion to order a jury trial for any charges not specifically enumerated in the statute, and therefore, we hold that the trial court did not abuse its discretion in

refusing to grant A.C.'s motions for a jury trial.

### III.

▇ A.C. argues that even if the statute does not mandate a jury trial, the federal and state constitutions do. Specifically, he posits that the Sixth Amendment to the United States Constitution guarantees him the right to a trial by jury. The Sixth Amendment provides "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury." U.S. Const. amend. VI. This provision entitles a criminal defendant to a jury trial for "serious" offenses. *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The right to a jury trial does not extend to "petty" offenses that most courts ordinarily define as offenses punishable by less than six months' imprisonment. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). Similarly, Article II of the Colorado Constitution allows the criminal defendant a speedy public trial by an impartial jury and states that the right to a jury trial "shall remain inviolate in criminal cases." Colo. Const. art. II, §§ 16, 23.

A.C. argues that the nature of the crimes charged subjected him to a potential commitment to the Department of Human Services for more than six months. Accordingly, by his construction, the charges would constitute serious offenses warranting a trial by jury. We disagree, based upon precedent from this court and the United States Supreme Court.

In *McKeiver v. Pennsylvania*, the United States Supreme Court addressed whether the Due Process Clause mandates that the right to a jury trial applies to juvenile delinquency adjudications. 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). The Court concluded that "trial by jury in the juvenile court's adjudicative state is not a constitutional requirement." *Id.* at 545, 91 S.Ct. 1976. The Court reasoned that mandating jury trials in juvenile proceedings as a consti-

---

risk adult or at-risk juvenile; murder; first or second degree assault; kidnapping; sexual assault; aggravated robbery; first degree arson;

first degree burglary; escape; or criminal extortion" when committed in certain circumstances.

tutional matter "will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal, protective proceeding." *Id.* Further, the Court held that the "imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner." *Id.* at 547, 91 S.Ct. 1976. The Court found that injecting a jury trial into juvenile proceedings as a matter of right would bring to the juvenile system "the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial" and would ultimately equate juvenile adjudications with criminal trials. *Id.* at 550, 91 S.Ct. 1976. The Court, while recognizing the problems and disappointments stemming from the juvenile system, found that mandating a jury trial in juvenile adjudications would not aid states in rehabilitating juvenile offenders. In fact, the Court feared such a mandate might impede states from further experimentation seeking creative solutions to the problems of young offenders. *Id.* at 547, 91 S.Ct. 1976. The Court concluded by noting that a state may, at its own discretion, mandate jury trials in juvenile proceedings as it sees fit to further the goals of the juvenile system. *Id.*

This court followed that rationale in *People v. T.M.*, 742 P.2d 905 (Colo.1987). In *T.M.*, a juvenile charged with the misdemeanor of criminal mischief requested a jury trial despite the fact that the People did not seek commitment to the Department of Institutions.[2] *Id.* at 906. T.M. argued that due process and the jury-guarantee provisions of the Colorado Constitution require a jury trial in juvenile delinquency proceedings where the juvenile is charged with crimes that would entitle an adult charged with the same crimes to a jury trial. *Id.* at 907. We rejected that argument and held that trials to the court in juvenile delinquency proceedings did not violate the due process clause re-

quirement of fundamental fairness. *Id.* at 911. We noted that "the underlying theme of a delinquency proceeding is to provide guidance and rehabilitation for the child and protection for society rather than fixing criminal responsibility, guilt or punishment." *Id.* at 907.

◼ A.C. attempts to distinguish *T.M.* because of the serious nature of the crimes charged against him, and the possible term of commitment. We are unpersuaded. Our decision in *T.M.* is limited by the facts of that case, but the reasoning is far broader. We analyzed the purposes of delinquency proceedings, and the protections of due process and chose to follow the reasoning of the United States Supreme Court in *McKeiver.* Indeed, the juveniles in *McKeiver* did face a penalty of potential loss of freedom for over six months, and the Supreme Court expressly declined to "inject" the right to a jury trial into state juvenile proceedings and instead determined that trials to the court did not violate due process. 403 U.S. at 550, 91 S.Ct. 1976. Our holding in *T.M.* invited the General Assembly to develop a more "informal system" with respect to juvenile offenses.[3] 742 P.2d at 911. The General Assembly has now enumerated the offenses that a jury must try and the offenses that a court must try. As to all other offenses, the statute gives the trial judge discretion to balance the benefits of informal, speedy and rehabilitative proceedings against the severity of the offense, the nature of the consequences and the particular facts of the case. The grant of discretion to the trial court is not so fundamentally unfair as to violate the juvenile's due process rights.

◼ Finally, A.C. claims that the trial court violated his equal protection rights by refusing to grant him a jury trial. A.C. claims that section 19–2–107 impermissibly interfered with the fundamental right of a juvenile to a jury trial. He claims fundamental fairness dictates that the court state a necessary and compelling state interest for

---

**2.** At the time of the *T.M.* case, the structure of the juvenile justice system contemplated commitment to the Department of Institutions not the Department of Human Services.

**3.** Indeed, in 1996, some years after *T.M.*, the General Assembly amended section 19–2–107 to further limit the offenses for which a juvenile is entitled to a jury trial.

the denial of such a right when the statute fails to provide for such an interest. We also reject this contention.

■ The right to equal protection of the laws guarantees that similarly situated parties receive similar treatment by the law. *J.T. v. O'Rourke*, 651 P.2d 407, 413 (Colo. 1982). A.C. posits that a juvenile charged with manslaughter faces potential periods of incarceration and deprivation of liberty associated with a conviction similar to that of adults charged with the same offense. Accordingly, because an adult would be entitled to a jury trial, A.C. argues that fundamental fairness entitles a juvenile similarly charged to a jury trial. However, because we hold that a jury trial is not a fundamental right for juveniles in delinquency proceedings, an equal protection violation occurs only if the legislative classification is unreasonable and bears no rational relationship to legitimate state objectives. *T.M.*, 742 P.2d at 911.

In *T.M.* we held that the legislature established a comprehensive system for the rehabilitation of juvenile offenders, which formed a rational basis for the denial of a jury trial even if an adult facing the same charge would be entitled to one. *Id.* The juvenile system has unique goals. "[O]ur acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). It is rational to provide a "less for-mal and adversarial setting for certain classes of juvenile suspects" because the juvenile system seeks to provide juveniles with care and guidance. *J.T.*, 651 P.2d at 413. Moreover, the legislature may rationally distinguish between juveniles charged with lesser crimes to further the valid governmental purposes of maintaining a simple and independent juvenile system. *Id.* Accordingly, the legislature's different treatment of juveniles and adults and among juveniles charged with lesser crimes with respect to an offender's entitlement to a jury trial does not constitute an equal protection violation.

## IV.

The General Assembly has chosen not to mandate a jury trial for a juvenile charged with those offenses charged against A.C. That decision does not violate either the United States or Colorado Constitutions. Hence, the clear statutory language governs. Here, the statute affords discretion to the trial judge to determine the availability of a jury trial for A.C., given the charges filed against him. The trial court did not err in declining to order a jury trial. We affirm the judgment of the court of appeals.