2013 CO 11

**In re the PEOPLE of the State of Colorado,**

**IN the INTEREST OF W.P., an Adult.**

**Supreme Court Case No. 12SA263**

Supreme Court of Colorado.

February 11, 2013

Attorneys for Respondent: Don Quick, District Attorney, Seventeenth Judicial District Mariana Vielma, Deputy District Attorney, Brighton, Colorado

Attorneys for Petitioner: Douglas K. Wilson, Public Defender Denver, Colorado, Ari Krichiver, Deputy Public Defender Brighton, Colorado

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 We accepted jurisdiction over this original proceeding to determine whether an indigent alleged juvenile offender is entitled as of right to a second competency evaluation at state expense. The petition initially framed the issue more broadly as "[w]hether the trial court judge abused his discretion by refusing to order a second competency evaluation at state expense." However, the public defender had justified—and the juvenile court denied—her request for a second competency evaluation at state expense on the basis that the Colorado Children's Code's silence on the issue meant it referred to sections 16–8.5–106 and 16–8.5–107, C.R.S. (2012), of the Colorado Code of Criminal Procedure. Furthermore, the petition presents only arguments for the applicability of these adult provisions in juvenile justice proceedings.

¶ 2 Two days after W.P.' s arrest on allegations of sexual assault on a child, and one day after the juvenile division of the Adams County District Court appointed a public defender to represent him, the court ordered W.P. to undergo a competency evaluation at state expense. Upon receiving the evaluation report, the court made a preliminary finding that W.P. was competent to proceed in the case. Citing ongoing concerns about her client's mental health, the public defender objected, requesting a competency hearing pursuant to section 19–2–1302(2), C.R.S. (2012), of the Children's Code and filing a motion for a second competency evaluation at state expense. At the motion hearing, the public defender stated that "[b]ecause the juvenile code is silent, they are referring to the adult code," which entitles a criminal defendant to a second competency evaluation at state expense. Concluding that the Chil-

dren's Code was "specifically silent on that issue," the court determined that the adult competency provisions did not apply to this case.

¶ 3 We hold that the district court did not abuse its discretion when it denied the public defender's request for a second competency evaluation pursuant to sections 16–8.5–106 and 16–8.5–107, because these adult competency provisions do not apply in juvenile justice proceedings either explicitly or by implication. Instead, we conclude the General Assembly created two distinct competency frameworks: one promoting the criminal justice system's goal of just punishment, the other advancing the juvenile justice system's goal of appropriately sanctioning juvenile offenders taking into consideration their own and society's best interests. The juvenile competency provisions require a court to order an evaluation at any stage of the proceedings if it develops doubts about the alleged juvenile offender's competency that are not satisfied by available information.

## I.

¶ 4 The Northglenn Police Department arrested W.P. on January 25, 2012. Because the alleged crimes occurred when W.P. was a minor, the court invoked the juvenile justice provisions in article 2 of the Colorado Children's Code (title 19 of the Colorado Revised Statutes).[1] W.P. faced juvenile justice proceedings stemming from allegations of sexual assault on a child, § 18–3–405(1), C.R.S. (2012), a class 4 felony, and sexual assault on a child involving a pattern of sexual abuse, § 18–3–405(1), (2)(d), C.R.S. (2012), a class 3 felony, in the juvenile division of the Adams County District Court. On January 26, the court appointed a public defender to represent W.P. in Case No. 12JD26. At a January 27 hearing, the court ordered a competency evaluation at state expense. Referencing the resulting evaluation report, the court on April 16 preliminarily found W.P. competent to proceed in the case. The public defender

---

1. *See* § 19–1–103(8)(a), C.R.S. (2012); § 19–2–104(6), (7), C.R.S. (2012) (describing the juvenile court's continuing jurisdiction; stating the section does not "confer any jurisdiction upon the court over a person for any offense committed after the person attains the age of eighteen

years"); *see also People in the Interest of M.C.,* 750 P.2d 69, 70 (Colo.App.1987) ("The age at which the acts were committed is the determinative factor ...."), *aff'd,* 774 P.2d 857 (Colo. 1989). W.P. does not contest the juvenile division's jurisdiction over him in this case.

objected to the finding and requested a competency hearing, which the court set for June 1.

¶ 5 Citing ongoing concerns about W.P.'s mental health, the public defender on May 2 filed a motion for a second competency evaluation at state expense by an evaluator of W.P.' s choice pursuant to sections 16–8.5–106 and 16–8.5–107 of the adult code. On May 24, the court granted a joint motion to continue the competency hearing, reset for July 10. At the July 10 hearing, the public defender reiterated the request for a second competency evaluation, arguing that 2008 amendments to the adult code–which entitled indigent criminal defendants to a second competency evaluation at state expense–also applied to indigent juveniles (and indigent adults subject to the juvenile court's continuing jurisdiction). Because the Children's Code is silent on the issue of a second competency evaluation, the public defender reasoned it effectively "referr[ed] to the adult code." However, the juvenile court denied the public defender's motion, concluding that the adult code provisions allowing a second evaluation at state expense do not apply to a proceeding under the Children's Code:

I believe there's case law on this that's already addressed this issue. That being said, the right to a second competency evaluation at State expense is not a constitutional right, it is a statutory right, and the statute is specifically silent on that issue with respect to the juvenile code. Therefore, the Court's interpretation is that the statute allowing for a second evaluation at State expense in the adult code simply does not apply to a juvenile.

¶ 6 The public defender requested "a continuance either to seek appellate relief or to get a second evaluation at Mr. [W.P.'s] expense." She argued further that, even if the court deemed sections 16–8.5–106 and 16–8.5–107 to be inapplicable, it was still authorized to grant W.P. a continuance for a second evaluation under *People v. Palmer*, 31 P.3d 863 (Colo.2001), upon "a showing of good cause," stating:

I do think the good cause additionally is that Dr. Bradley, when he did this competency evaluation, did not have the IEP, the education plans, for Mr. [W.P.], and did not have his history of medical records. I received those after the evaluation was done. There seems to be indications that ... Dr. Bradley was unclear as to whether or not he believed Mr. [W.P.'s] memory issues and such related to competency, however, there's clear documentation dating back years that Mr. [W.P.] had these issues and that it's not simply something he's doing to avoid a prosecution in this case.

So either way, I think that I have to ask for a second—or ask for a continuance to get a second evaluation at our expense if this Court is going to deny a State-expense second evaluation.

The district court did not rule on W.P.'s good cause motion or respond directly to the alternative request for permission for a second evaluation at W.P.'s expense. It granted a thirty-day continuance to allow the public defender to file a C.A.R. 21 petition on W.P.' s behalf on the issue of his statutory right to receive a second competency evaluation at state expense.

¶ 7 We issued our rule to show cause why the district court should not order a second competency evaluation at state expense, as of right.

## II.

¶ 8 We hold that the district court did not abuse its discretion when it denied the public defender's request for a second competency evaluation pursuant to sections 16–8.5–106 and 16–8.5–107, because these adult competency provisions do not apply in juvenile justice proceedings either explicitly or by implication. Instead, we conclude the General Assembly created two distinct competency frameworks: one promoting the criminal justice system's goal of just punishment, the other advancing the juvenile justice system's goal of appropriately sanctioning juvenile offenders taking into consideration their own and society's best interests. The juvenile competency provisions require a court to order an evaluation at any stage of the proceedings if it develops doubts about the alleged juvenile offender's competency that are not satisfied by available information.

¶ 9 We begin our analysis by identifying the applicable standard of review. Next we examine the origin and substance of sections 16–8.5–106 and 16–8.5–107, address their scope of applicability in light of the statutes governing competency determinations in the juvenile and criminal justice contexts, and conclude that these sections do not apply in juvenile justice proceedings. Finally, we apply our conclusions of law to the facts of this case.

### A. Standard of Review

¶ 10 We review for abuse of discretion a trial court's factual determination of a defendant's competency or incompetency. *Bloom v. People,* 185 P.3d 797, 808 (Colo. 2008). To establish an abuse of discretion, the defendant must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *Id.*; *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993). Whether an indigent juvenile has a statutory right to receive a second competency evaluation at state expense is a question of law we review de novo. *See Bostelman v. People,* 162 P.3d 686, 689–90 (Colo.2007) (construing the direct filing statute).

¶ 11 In interpreting a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts. *Moffett v. Life Care Ctrs. of Am.,* 219 P.3d 1068, 1072 (Colo.2009). We begin with the plain language of the statute. *Id.* If the plain language is unambiguous and does not conflict with other statutory provisions, we look no further. *Frazier v. People,* 90 P.3d 807, 810 (Colo.2004). When possible, we endeavor to reconcile potential conflicts between two statutes that regulate the same conduct. *Moffett,* 219 P.3d at 1072. To address ambiguity and harmonize two seemingly conflicting statutes, we look to factors beyond plain language, such as legislative history, the consequences of a given con-struction, and the goal of the statutory scheme. *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 241 (Colo.2009); *Frazier,* 90 P.3d at 811. When interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. *Martin v. People,* 27 P.3d 846, 851–52 (Colo.2001).

¶ 12 If we conclude that two applicable provisions are irreconcilable, we assume the General Assembly is aware of its prior enactments and deem the more recent statute to prevail over the older one. *Jenkins,* 208 P.3d at 242; *see* § 2–4–206, C.R.S. (2012). However, a "special or local provision" will prevail "as an exception to the general provision, unless the general provision is the later adoption" and the General Assembly manifested clear intent for the general provision to prevail.[2] § 2–4–205, C.R.S. (2012); *see Jenkins,* 208 P.3d at 241–42; *Martin,* 27 P.3d at 852.

### B. Origin and Substance of Sections 16–8.5–106 and 16–8.5–107, Affording Indigent Criminal Defendants a Second Competency Evaluation by an Evaluator of Choice at State Expense

¶ 13 Due process prohibits the trial of an incompetent defendant. *Bloom,* 185 P.3d at 808; *People v. Mack,* 638 P.2d 257, 263 (Colo.1981). A defendant is "incompetent to proceed" if, "as a result of a mental disability or developmental disability," he or she lacks "sufficient present ability to consult with [his or her] ... lawyer with a reasonable degree of rational understanding in order to assist in the defense, or ... does not have a rational and factual understanding of the criminal proceedings." § 16–8.5–101(11), C.R.S. (2012). If a court "has reason to believe" the defendant in a criminal trial is incompetent to proceed, the judge is duty-bound "to suspend the proceeding and determine the [defendant's] competency or incompetency" before continuing.[3] § 16–8.5–

---

**2.** By definition, a general provision covers a larger area of the law while a specific provision acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance. *Martin,* 27 P.3d at 852.

**3.** Section 19–2–1301(3), C.R.S. (2012), of the Children's Code requires virtually any party to a delinquency action with "reason to believe that a juvenile is incompetent to proceed" to raise the question.

102(2)(a), C.R.S. (2012). If the court lacks the information necessary to make a preliminary finding of competency or incompetency, or "[i]f either party objects to the court's preliminary finding," the court must order a competency evaluation. § 16–8.5–103(2), C.R.S. (2012).

¶ 14 Since July 1, 2008, indigent defendants in the Colorado criminal justice system have been entitled to receive an initial and a second competency evaluation at state expense. This statutory right originated with the enactment of House Bill 08–1392 ("H.B. 1392"), entitled "An Act Concerning Competency to Proceed in Adult Criminal Cases."

¶ 15 The General Assembly intended H.B. 1392 to "encourage prompt judicial determination for persons undergoing competency evaluation or treatment, improve the health of defendants, avoid delays in criminal cases, and conserve state resources by eliminating unnecessary hospitalizations." Ch. 389, sec. 1(2), 2008 Colo. Sess. Laws 1837, 1837. The act separated the competency statutes from the sanity statutes, creating a comprehensive article governing adult competency to proceed in a criminal case.[4] It accomplished this division by adding article 8.5, containing eighteen provisions pertaining to competency, to title 16 (the Colorado Code of Criminal Procedure) and removing references to competency law and procedure from the existing sanity provisions of article 8. Additionally, the act updated cross-references to the competency provisions appearing in three sections of title 19 (the Colorado Children's Code), one section of title 26 (the Colorado Human Services Code), and one section of title 27 (regarding Behavioral Health).

¶ 16 H.B. 1392 significantly altered the procedures surrounding determination of an adult defendant's competency to proceed. For example, it replaced section 16–8–111, C.R.S. (2007)—which had committed the question of whether or not a defendant could receive a competency evaluation[5] to a court's discretion–with section 16–8.5–103, C.R.S. (2012[6]), which mandates that a court order a competency evaluation upon either party's timely objection to its preliminary finding of competency or incompetency. See § 16–8.5–103(1)–(2). Additionally, upon timely motion, article 8.5 allows a criminal defendant to seek a second competency evaluation by an "evaluator of his or her own choice." See §§ 16–8.5–103(4), 16–8.5–106(1). Finally, section 16–8.5–107 explicitly entitles an indigent defendant to receive an initial competency evaluation "at state expense" and a second evaluation "paid for by the court." The provision mandates that,

> [i]n all proceedings under this article, the court shall appoint competency evaluators or attorneys for a defendant at state expense upon motion of the defendant with proof that he or she is indigent and without funds to employ competency evaluators or attorneys to which he or she is entitled under this article. If a second evaluation is requested by an indigent defendant, it shall be paid for by the court.

§ 16–8.5–107.

4. *See* Final Bill Summary for HB08–1392, H. Comm. on Judiciary (Apr. 15, 2008), http://www.leg.state.co.us/Clics/CLICS2008A/commsumm.nsf/IndSumm/9A41A40ED71ED59C8725742C005B1994 (including Attachment D—a side-by-side comparison of then-current law with the changes proposed in H.B. 1392—and Attachment E—a "Fact Sheet," prepared by the Colorado Department of Human Services, summarizing H.B. 1392 as "separat[ing] the sanity and competency statutes and collect[ing] and organiz[ing] competency statutes into a logical order" as well as "provid[ing] definitions ... tailored for competency determinations rather than sanity determinations ... consistent with Colorado and United States Supreme Court case law").

5. Note that section 16–8–111 used the term "competency examination." However, article 8.5 instead employs the term "competency evaluation." The juvenile justice competency provisions use both terms without clearly differentiating between them. *See* § 19–2–1302, C.R.S. (2012) (referring to both without differentiating the terms). In the interest of clarity, we use the term "competency evaluation" unless directly quoting a statutory provision.

6. Enacted Senate Bill 12–175, effective July 1, 2012, altered section 16–8.5–103's timeframes for objection, requesting a hearing or second evaluation, and filing a second evaluation report; otherwise, the section remained unchanged during 2012. *See* ch. 208, sec. 80, § 16–8.5–103, 2012 Colo. Sess. Laws 822, 852.

## C. Applicability of Sections 16–8.5–106 and 16–8.5–107

¶ 17 W.P. contends that sections 16–8.5–106 and 16–8.5–107 apply not only in criminal proceedings but also in juvenile justice proceedings conducted pursuant to article 2 of the Children's Code. He argues that, although the Children's Code lacks "a provision similar to the adult statute," he has the constitutional right to due process and equal protection under the law and, therefore, urges us "to apply the adult criminal statute in *pari materia* with the juvenile statute to provide a just and fair result."

¶ 18 In essence, W.P. argues we should treat sections 16–8.5–106 and 16–8.5–107 as more specific provisions that create an exception to the more general competency provisions of the Children's Code. He maintains the court of appeals' decision in *People in the Interest of E.Z.L.*, 815 P.2d 987 (Colo.App. 1991), should guide our analysis here. We disagree. In *E.Z.L.*, the court of appeals construed a Criminal Code provision explicitly applicable to juveniles in *pari materia* with a conflicting juvenile justice provision, concluding that the criminal provision, as "the more specific," created an exception to the juvenile provision. *Id.* at 988–89. However, unlike the Criminal Code provisions at issue in *E.Z.L.*, sections 16–8.5–106 and 16–8.5–107 are not clearly applicable to juveniles. *See id.* at 988.

¶ 19 We do not construe the adult provision allowing indigent defendants to receive a second competency evaluation at state expense to be more specific than the Children's Code's competency provisions. Instead, we construe the adult and juvenile competency statutes as creating distinct procedural frameworks, one tailored to promote the goals of the criminal justice system, the other aimed at facilitating the purposes of the juvenile justice system. In any particular case, then, either the adult competency statutes, including sections 16–8.5–106 and 16–8.5–107, apply or the juvenile competency statutes apply. Therefore, there is no statutory conflict to reconcile.

### 1. Determining Competency to Proceed in the Juvenile Justice System

¶ 20 The General Assembly designed the juvenile justice system [7] to promote the overriding purposes of the Children's Code—serving child welfare and society's best interests. *See* § 19–1–102(1)(a), (2), C.R.S. (2012); *A.C., IV v. People,* 16 P.3d 240, 241 (Colo.2001). Consequently, the procedures set out in the juvenile justice provisions of the Children's Code aim

> to protect, restore, and improve the public safety by creating a system of juvenile justice that will appropriately sanction juveniles who violate the law .... tak[ing] into consideration the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society.

§ 19–2–102(1), C.R.S. (2012); *Bostelman,* 162 P.3d at 691.

¶ 21 Consistent with these ends, we recognize juvenile justice proceedings as civil, rather than criminal, in nature. *People in the Interest of M.C.,* 774 P.2d 857, 861 (Colo.1989); *see Bostelman,* 162 P.3d at 691; *see also Kent v. United States,* 383 U.S. 541, 554–55, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (explaining that, in juvenile justice proceedings, the state acts as "parens patriae rather than prosecuting attorney and judge"). Therefore, the Children's Code provides for delinquency adjudications instead of criminal convictions. *See A.C., IV,* 16 P.3d at 241–42. Although juvenile justice proceedings share some similarities with criminal trials, their underlying theme is providing guidance and rehabilitation for a juvenile offender and protection for society—not fixing criminal responsibility, guilt, and punishment. *Id.* at 242; *see Kent,* 383 U.S. at 554–55, 86 S.Ct. 1045 (noting that the juvenile justice system is "rooted in social welfare philosophy rather

---

7. For a history of the juvenile justice system in Colorado, see our decision in *Flakes v. People,* 153 P.3d 427, 431–433 (Colo.2007). In *Flakes,* we construed the direct filing statute, section 19–2–517 (which allows direct filing of certain enumerated charges in district—as opposed to juvenile—court). *Id.* at 430, 434–36.

than in the corpus juris"); *Bostelman,* 162 P.3d at 691. Consequently, while we have applied many of the basic protections traditionally associated with a criminal prosecution to juvenile justice proceedings, *S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988), alleged juvenile offenders are not entitled to the full complement of constitutional protections owed criminal defendants.[8] *See, e.g., People v. Juvenile Ct., City & Cnty. of Denver,* 893 P.2d 81, 91 (Colo.1995).

¶ 22 The juvenile court[9] has jurisdiction in proceedings "[c]oncerning any juvenile ten years of age or older who has violated ... [a]ny federal or state law." § 19–2–104(1), C.R.S. (2012). This extends to "any person eighteen years of age or older ... under the continuing jurisdiction of the court ... for an alleged delinquent act committed prior to the person's eighteenth birthday." § 19–1–103(8)(a), C.R.S. (2012). The juvenile court's jurisdiction persists "until all orders have been fully complied with ... or any pending cases have been completed ... regardless of the age of such person." § 19–2–104(6), C.R.S. (2012).

¶ 23 The Children's Code devotes five sections—comprising part 13 of article 2—to the issue of competency to proceed and specifies

that they "shall only apply to proceedings under this title." § 19–2–1301(1), C.R.S. (2012). The juvenile justice competency statutes are:

● § 19–2–1301, C.R.S. (2012), Mental incompetency to proceed—effect—how and when raised

● § 19–2–1302, C.R.S. (2012), Determination of incompetency to proceed

● § 19–2–1303, C.R.S. (2012), Procedure after determination of competency or incompetency

● § 19–2–1304, C.R.S. (2012), Restoration to competency

● § 19–2–1305, C.R.S. (2012), Procedure after hearing concerning restoration to competency

¶ 24 Section 19–2–1301(2) provides that no juvenile may be tried or sentenced if, "as a result of a mental disability or developmental disability," he or she lacks "sufficient present ability to consult with ... [his or her] lawyer with a reasonable degree of rational understanding in order to assist in the defense, or ... [lacks] a rational and factual understanding of the criminal proceedings." § 16–8.5–101(11) (supplying the definition for "incompetent to proceed" cross-referenced in sec-

---

8. For example, the U.S. Supreme Court has not extended the Sixth Amendment right to a jury trial where an alleged criminal offender faces the potential loss of freedom for more than six months to the juvenile justice system. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (reasoning that mandating jury trials in juvenile proceedings as a constitutional matter could detrimentally "remake the juvenile proceeding into a fully adversary process and [ ] put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding"); *A.C., IV,* 16 P.3d at 243–44; *People in the Interest of T.M.,* 742 P.2d 905, 907 (Colo.1987) (declining to construe Colorado due process and jury-trial guarantees in a fashion inconsistent with the U.S. Supreme Court's interpretation of the federal constitution in the context of juvenile adjudications). Colorado has created a limited statutory right to trial by jury in the juvenile justice system under certain circumstances. *See* § 19–2–107 (giving juveniles the right to "demand a trial by a jury" only if "alleged to be an aggravated juvenile offender" or "to have committed an act that would constitute a crime of violence ... if committed by an adult"). Similarly, we have recognized that juveniles' significant interest in

freedom from institutional restraints is not a fundamental right for the purposes of the Fourteenth Amendment, based in part on the fact that, unlike an adult, a juvenile is always subject to some measure of custodial supervision. *People v. Juvenile Ct., City & Cnty. of Denver,* 893 P.2d 81, 94 (Colo.1995) (Juveniles "are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae."* (quoting *Schall v. Martin,* 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984))). Consequently, decisions articulating due process standards for evaluating the circumstances in which a juvenile may be detained have sought to accommodate the goals and philosophies of the juvenile justice system within the due process framework of fundamental fairness: although preventive detention of juveniles may serve a legitimate governmental objective, punitive detention of juveniles prior to final adjudication does not satisfy the fundamental fairness doctrine. *Id.* at 95.

9. When used in the Children's Code, "juvenile court" signifies "the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver." § 19–1–103(70), C.R.S. (2012).

tion 19–2–1301(2)). Therefore, "[w]hen a party ... has reason to believe that a juvenile is incompetent to proceed in a delinquency action, the party shall raise the question of the juvenile's competency in the following manner:

 (a) On its own motion, the court shall suspend the proceeding and determine the competency or incompetency of the juvenile as provided in section 19–2–1302.

 (b) By motion of the prosecution, probation officer, guardian ad litem, or defense, made in advance of the commencement of the particular proceeding. The motion may be filed after the commencement of the proceeding if, for good cause shown, the mental condition of the juvenile was not known or apparent before the commencement of the proceeding.

 (c) By the juvenile's parent or legal guardian.

§ 19–2–1301(3).

¶ 25 "Whenever the question of a juvenile's competency to proceed is raised," the Children's Code requires the court to "make a preliminary finding that the juvenile is or is not competent to proceed." § 19–2–1302(1). "If the court feels that the information available to it is inadequate for making such a finding, it shall order a competency examination." *Id.* If counsel timely requests a hearing on the preliminary finding,

> the court shall hold a competency hearing. If the court did not order a competency examination or other evaluation prior to its preliminary determination and the court determines adequate mental health information is not available, the court shall refer the juvenile for a competency examination prior to the hearing. At the conclusion of the competency hearing, the court shall make a final determination regarding the juvenile's competency to proceed. At a competency hearing held pursuant to this subsection (2), the burden of submitting evidence and the burden of proof by a preponderance of the evidence are upon the party asserting the incompetency of the juvenile.

§ 19–2–1302(2). In sum, a juvenile court must only order a competency evaluation when it sees the need for one. Here, the district court ordered a competency eval-

uation in the first instance and found W.P. competent to proceed.

¶ 26 A competency evaluation must take place "in the least-restrictive environment, taking into account the public safety and the best interests of the juvenile." § 19–2–1302(4)(a). Only "a licensed psychiatrist or licensed psychologist ... experienced in the clinical evaluation of juveniles and trained in forensic competency assessments, or a psychiatrist or psychologist who is in forensic training and under the supervision of a licensed forensic psychiatrist or licensed psychologist with expertise in forensic psychology," may conduct the competency evaluation. § 19–2–1302(4)(b). "If the evaluation concludes the juvenile is incompetent to proceed, the evaluation shall include a recommendation as to whether the juvenile may be restored to competency and identify appropriate services" to achieve that goal. § 19–2–1302(4)(c).

### 2. Determining Competency to Proceed in the Criminal Justice System

¶ 27 Unlike the juvenile justice system, the criminal justice system focuses on a person's criminal liability. Therefore, the Code of Criminal Procedure aims

> to secure simplicity in procedure, fairness in administration, the elimination of unjustifiable expense and delay, the effective apprehension and trial of persons accused of crime, the just determination of every criminal proceeding by a fair and impartial trial, an adequate review, and the preservation of the public welfare and the fundamental human rights of individuals.

§ 16–1–103, C.R.S. (2012). These procedural goals complement the purposes of sentencing under the Criminal Code: punishing convicted offenders, assuring their fair and consistent treatment, deterring crime, promoting rehabilitation, reducing recidivism, promoting responsibility, and providing "restoration and healing for victims and the community." § 18–1–102, C.R.S. (2012).

¶ 28 Unless the Code of Criminal Procedure expressly states otherwise, it applies only in criminal proceedings. § 16–1–102, C.R.S. (2012) ("Except as specifically set

forth in this code, the provisions of this code are not applicable to proceedings under the 'Colorado Children's Code' or to violations of municipal charters or municipal ordinances.").

¶ 29 Eighteen sections (comprising article 8.5) of the Code of Criminal Procedure address the issue of competency to proceed. The descriptive headings for five of the sections (16–8.5–102, –103, –111, –113, and –114) are nearly identical to the headings the General Assembly supplied for the five Children's Code competency provisions. For example, section 16–8.5–103 (herein referred to as "the adult determination statute") bears the heading "Determination of competency to proceed," and section 19–2–1302 (herein referred to as "the juvenile determination statute") bears the heading "Determination of incompetency to proceed." Subsection 1 of both sections begins with the language, "[w]henever the question of ... competency to proceed is raised ...," and both sections describe when and how the court makes a preliminary finding of competency or incompetency and when the court must order a competency evaluation or competency hearing. Because the juvenile competency provisions import the adult definitions for "competent to proceed" and "incompetent to proceed," the standard for competency itself is uniform across the two systems. *See* §§ 16–8.5–101(11), 19–2–1301(2).

¶ 30 Yet, despite their similarities, the sections governing competency to proceed in the criminal and juvenile justice contexts differ in important ways. Although they purport to fill the same niche in their respective systems, they differ in content.

¶ 31 The issue here is a criminal defendant's statutory right to a second competency evaluation,[10] a provision not included in the Children's Code's competency statutes. Whereas under the juvenile determination statute, the court at all times retains the ultimate power to decide whether or not to order a competency evaluation, the adult determination statute dictates a competency evaluation when "either party [timely] objects to the court's preliminary finding" of competency or incompetency. § 16–8.5–103(2). Section 16–8.5–107 entitles indigent defendants to an initial competency evaluation "at state expense." Similarly, in the criminal justice system, either party may timely demand that the court order a second competency evaluation. § 16–8.5–103(3)–(4) (providing that "either party may request ... a second evaluation" and that "[i]f a party requests a second evaluation, any pending requests for a hearing shall be continued until the receipt of the second evaluation report"). All told, the adult determination statute contains eight references, spread

10. In their brief, the People inaccurately assert that, even if we deem "the competency provisions of the adult code" to apply to W.P., he "is still not entitled to a second evaluation by an evaluator of his choosing because he has not made a showing of good cause." To support this proposition, they point to three cases we decided under the pre-H.B. 1392 competency regime: *Mack*, *Palmer*, and *Bloom*. We based our holdings in these cases on provisions of article 8 of the Code of Criminal Procedure that either no longer exist or no longer apply to competency to proceed. In *Mack*, we held that neither due process nor the competency statutes (specifically, sections 16–8–110(2) and 16–8–111, C.R.S. (1973, 1978 Repl. Vol. 8)) required a court to grant a request for a second competency evaluation after the accused had already received an adequate hearing on his or her claimed incompetency. *See* 638 P.2d at 263. In *Palmer*, we held that a trial court need not grant an indigent criminal defendant's request for a second competency evaluation by an expert of his choosing at the state's expense. *See* 31 P.3d at 871. Instead, we determined that a defendant, whether indigent or not, had to make a showing of good cause to warrant a second competency evaluation of his or her choice under sections 16–8–106(1) and 16–8–108, 6 C.R.S. (2000). *See id.* at 871–72. Finally, in *Bloom*, we held that the trial court did not abuse its discretion in finding Bloom competent without first obtaining a formal competency evaluation, over Bloom's objection. *See* 185 P.3d at 810. Our holding hinged on the fact that the decision to order a formal competency hearing lay within the trial court's discretion, as evidenced by the permissive language ("may order") the General Assembly used in section 16–8–111, C.R.S. (2007). *See id.* at 809. Less than three weeks after we issued our decision in *Bloom*, all three cases were superseded by statute when H.B. 1392 went into effect, giving criminal defendants the right to an initial and second competency evaluation, if requested in timely fashion. Therefore, had we concluded that sections 16–8.5–106 and 16–8.5–107 applied to W.P., our holdings in *Mack*, *Palmer*, and *Bloom* would have been irrelevant here.

over four subsections, to the phrase "second evaluation." *See* § 16–8.5–103(3)–(6). Other sections of article 8.5 lend additional details regarding a defendant's right to a second competency evaluation. For instance, section 16–8.5–106(1) provides that,

> [i]f a defendant wishes to be examined by a competency evaluator of his or her own choice in connection with any proceeding under this article, the court, upon timely motion, shall order that the competency evaluator chosen by the defendant be given reasonable opportunity to conduct the *second evaluation,* in accordance with sections 16–8.5–103 and 16–8.5–111.

(Emphasis added). Section 16–8.5–107 entitles indigent defendants to a second competency evaluation "paid for by the court." Article 8.5's repeated references to a second competency evaluation stand in sharp contrast to the utter lack of any reference to a second competency evaluation in the juvenile competency provisions.[11]

### 3. Sections 16–8.5–106 and 16–8.5–107 Do Not Apply in Juvenile Justice Proceedings

¶ 32 The adult and juvenile competency schemes do not conflict with one another. We conclude that the General Assembly did not intend sections 16–8.5–106 and 16–8.5–107 of the Code of Criminal Procedure to apply in the juvenile justice context.

¶ 33 First, sections 16–8.5–106 and 16–8.5–107 do not expressly apply in the juvenile justice context. Neither these sections nor any other provisions of article 8.5, governing competency to proceed in criminal cases, specifically sets forth the sections' applicability to juvenile justice proceedings. In defining the scope of the Code of Criminal Procedure, section 16–1–102 explicitly states, "[e]xcept as specifically set forth in this code, the provisions of this code are not applicable to proceedings under the 'Colorado Children's Code' or to violations of municipal charters or municipal ordinances." Likewise, part 13 of article 2 of the Children's Code—encompassing the Children's Code's competency provisions—opens by stating, "[t]he provisions of this part 13 shall *only* apply to proceedings under this title." § 19–2–1301(1) (emphasis added).

¶ 34 Second, we perceive no evidence that implies the General Assembly intended sections 16–8.5–106 and 16–8.5–107, or any other adult competency provision, to apply in the context of juvenile justice proceedings. H.B. 1392's title conveys that the legislature envisioned the act as altering only "Competency to Proceed in Adult Criminal Cases," and neither H.B. 1392 nor subsequent legislation cross-references sections 16–8.5–106 and 16–8.5–107 to the Children's Code. Indeed, the act explicitly affected the Children's Code only by updating cross-references to Code of Criminal Procedure definitions for "incompetent to proceed," "restoration hearing," and "competent to proceed," which the Children's Code specifically borrows.[12] In reviewing

---

11. The adult and juvenile competency provisions differ in other ways. For example, while a juvenile competency evaluation must take place "in the least-restrictive environment," § 19–2–1302(4)(a), there is no such requirement for an evaluation of a criminal defendant, *see* § 16–8.5–105(1)(a), C.R.S. (2012). Similarly, the procedure required following determination of incompetency differs in the criminal and juvenile justice systems. *Compare* § 16–8.5–111(2) (requiring the court to either "release the defendant on bond" or "commit the defendant to the custody of the department [of human services]"), with § 19–2–1302(4)(c) ("If the evaluation concludes the juvenile is incompetent to proceed, the evaluation shall include a recommendation as to whether the juvenile may be restored to competency and identify appropriate services" to achieve that goal.), *and* § 19–2–1303(2) (providing that, "[i]f the court finally determines . . . that the juvenile is incompetent

to proceed, but may be restored to competency, the court shall stay the proceedings and order that the juvenile receive services designed to restore the juvenile to competency" but "[i]f the court finally determines that the juvenile is incompetent to proceed and cannot be restored to competency, the court shall determine whether a management plan for the juvenile is necessary, taking into account the public safety and the best interests of the juvenile").

12. *See* § 19–2–1301(2) (regarding the effect of a juvenile's mental incompetency to proceed); § 19–2–1304(1) (explaining when a court has discretion, or is mandated, to order a restoration hearing); § 19–2–1302(4)(c) (describing the requirements for juvenile competency evaluations). The act updated the definition of "incompetent to proceed" and left the definition of "restoration hearing" substantively unchanged when it moved them from subsections 16–8–102(3) and (7) to

the juvenile competency provisions to update these definitions, the legislature could have amended the provisions to more closely mirror their adult counterparts or inserted some reference to sections 16–8.5–106 and 16–8.5–107.[13] It did not. In 2009, the General Assembly addressed an oversight in the final version of H.B. 1392 that had previously caused the three cross-references to identify the wrong subsections of section 16–8.5–101.[14] Despite this additional opportunity to amend the Children's Code to reference, in some way, the adult provisions allowing indigent defendants to receive a second evaluation at the state's expense, the General Assembly did not do so.

¶ 35 This is not a circumstance in which two applicable statutes conflict. By their plain language, the adult determination statute and sections 16–8.5–106 and 16–8.5–107 entitle an indigent criminal defendant to receive up to two competency evaluations at state expense. By its plain language, the juvenile determination statute accords the juvenile court discretion to decide when to order a competency evaluation. One statutory framework applies to criminal proceedings while the other applies to juvenile justice proceedings. Because the adult and juvenile competency provisions are not part of a single comprehensive legislative scheme, we do not construe them together or attempt to reconcile them.

### 4. No Constitutional Mandate for a Second Competency Evaluation at State Expense

¶ 36 No constitutional concerns compel us to conclude that sections 16–8.5–106 and 16–

8.5–107 must apply in juvenile justice proceedings. W.P. argues that his rights to due process and equal protection under the law oblige us to "apply the adult criminal statute in *pari materia* with the juvenile statute to provide a just and fair result." Because juvenile justice proceedings are fundamentally different from adult criminal proceedings, we do not extend all constitutional protections afforded to adult criminal defendants to alleged juvenile offenders. *Juvenile Ct., City & Cnty. of Denver*, 893 P.2d at 91; *S.A.S. v. Dist. Ct. in & for Jefferson Cnty.*, 623 P.2d 58, 60–61 (Colo.1981); *see supra*. The divergent purposes of the adult and juvenile justice systems may logically demand divergent procedures and procedural protections. Consequently, the competency procedures applicable in juvenile justice proceedings may validly differ in important ways from those used in the criminal context.

¶ 37 The right to equal protection of the law guarantees that similarly situated parties will receive similar treatment. *A.C., IV*, 16 P.3d at 245. Since criminal defendants are statutorily entitled to a second competency evaluation (at state expense, for indigent defendants), W.P. argues that fundamental fairness requires us to extend that right to alleged juvenile offenders in juvenile justice proceedings. However, because we hold that a competency evaluation—unlike the right not to be tried when incompetent to proceed—is not a fundamental right for juveniles in delinquency proceedings, a legislative distinction between adults and juveniles violates equal protection only if the classification

---

subsections 16–8.5–101(11) and (13), respectively. *See* ch. 389, secs. 2, 3, §§ 16–8–102(3), (7), 16–8.5–101(11), (13), 2008 Colo. Sess. Laws 1837, 1850. Finally, H.B. 1392 created a definition for "competent to proceed" at 16–8.5–101(4). Previously, section 19–2–1302(4)(c) referred to section 16–8–102(3), presumably invoking its definition of "incompetent to proceed" in the negative. *See* ch. 389, secs. 3, 16 §§ 16–8–102(3), 19–2–1302(4)(c), 2008 Colo. Sess. Laws 1837, 1850, 1859.

**13.** We note that simply injecting references to sections 16–8.5–106 and 16–8.5–107 into the juvenile determination statute, without more, would have created significant statutory conflict.

**14.** As enacted, Senate Bill 09–292 revised various Colorado statutes in order to address "obsolete, inconsistent, and conflicting provisions" and to clarify language to more accurately reflect legislative intent. Ch. 369, tit., 2009 Colo. Sess. Laws 1938. Of pertinence here, the legislation corrected title 19's definitional cross-references to section 16–8.5–101. This change was necessary because the house judiciary committee report had added "additional definitions in section 16–8.5–101, resulting in the renumbering of [its] subsections" but had "neglected to make [necessary] conforming amendment[s]" to the title 19 cross-references. *Id.* secs. 37–39, app., §§ 19–2–1301(2), 19–2–1302(4)(c), 19–2–1304(1), 2009 Colo. Sess. Laws at 1950, 1995.

is unreasonable and bears no rational relationship to legitimate state objectives. *See id.*

¶ 38 No such violation occurs here. The General Assembly's establishment of a comprehensive system for the rehabilitation of juvenile offenders—which seeks to provide care and guidance, in contrast to the punitive focus of our criminal justice system—provides a rational basis for denial of an initial and second competency evaluation as of right in the juvenile justice system, even though a criminal defendant would be entitled to both. *See id.* In order to protect an alleged juvenile offender's welfare in a juvenile justice proceeding, the state inhabits a very different role than it does in a criminal prosecution: that of parens patriae. *S.A.S.*, 623 P.2d at 60; *see also Kent*, 383 U.S. at 554–55, 86 S.Ct. 1045. In fact, the juvenile competency provisions—unlike the adult provisions—explicitly require the court, prosecution, probation officer, guardian ad litem, defense counsel, and parent or legal guardian to actively safeguard an alleged juvenile offender's right not to be tried or sentenced while incompetent to proceed. *See* § 19–2–1301(2), (3) (mandating that a party having "reason to believe that a juvenile is incompetent to proceed in a delinquency action ... shall raise the question of the juvenile's competency"). Whenever the issue has been raised and the court feels inadequately informed to make a competency determination, "it shall order a competency examination." § 19–2–1302(1); *see* § 19–2–1302(2), (3). We conclude that the General Assembly could reasonably and rationally view this arrangement as more conducive to achieving the less adversarial, more "intimate, informal

[and] protective proceeding" the U.S. Supreme Court identified as the aspirational goal of the juvenile justice system in *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), than sections 16–8.5–106 and 16–8.5–107.

### D. Application to this Case

¶ 39 Because sections 16–8.5–106 and 16–8.5–107 of the Code of Criminal Procedure do not apply to alleged juvenile offenders in juvenile justice proceedings, the district court did not abuse its discretion by denying the public defender's request for a second competency evaluation at state expense under that authority. Nonetheless, while an alleged juvenile offender is not entitled to receive an initial or second competency evaluation as of right, the juvenile competency provisions require a court to order an evaluation at any stage of the proceedings if it has doubts about the alleged juvenile offender's competency that are not satisfied by the information available to it.[15] *See* §§ 19–2–1301, 19–2–1302.

### III. Conclusion

¶ 40 Accordingly, we discharge the rule and return this case to the district court for further proceedings consistent with this opinion.

---

15. We note that, although the only issue properly before us is whether W.P. is entitled as of right to a second competency evaluation pursuant to sections 16–8.5–106 and 16–8.5–107 of the Code of Criminal Procedure, the district court did not respond to (1) the public defender's alternative request for permission to get a second evaluation at W.P.'s expense or (2) the public defender's assertion of the existence of good cause for a second competency evaluation. When proceedings resume, the court should consider and respond to both. *See* § 19–2–1301(3)(b).